MOLINE DISPATCH PUBLISHING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9235.   Promulgated May 2, 1928.

*William R. Conklin, Esq., Edward S. Bentley, Esq.,* and *Clifford Yewdall, C. P. A.,* for the petitioner.
*James A. O'Callaghan, Esq.,* for the respondent.

OPINION.

TRUSSELL: Due to the number of separate issues each one will be decided separately.

(1) The first issue relates to the proper basis for depreciation on petitioner's composing room and press room machinery and equipment acquired prior to March 1, 1913, and in constant use during the years 1919, 1920, and 1921. Respondent claimed that the March 1, 1913, value has not been proven and he allowed depreciation on the basis of cost. At the hearing petitioner produced two witnesses who had been for many years in the business of selling machinery and equipment such as used by petitioner and who were familiar with the machinery and equipment owned and used by petitioner. Those two witnesses had sold petitioner machinery and equipment, had visited the plant, knew the condition of it and valued it, by separate items, at an aggregate March 1, 1913, value slightly in excess of $35,000. Petitioner also produced a witness, the chief mechanic of the composing room of the Washington Evening Star, who during the past 34 years has sold, bought, and inspected all kinds and sizes of printing equipment. The said witness stated what machinery and equipment was necessary to produce a twenty-page newspaper, that the machinery and equipment was all stand-

ard make and used throughout the country, that he knew the March 1, 1913, fair market values of the various items of equipment required for the production of a twenty-page paper even though he had not inspected it because the machinery would have to be kept in good condition to maintain its production and he valued petitioner's machinery and equipment at an aggregate of $35,000 on March 1, 1913. Without setting forth the values of the numerous items of equipment we have found as a fact that the March 1, 1913, value of petitioner's machinery and equipment was $35,000 which should be used as the basis for computing depreciation on said assets for the years 1919, 1920, and 1921. There is no dispute as to the rates of depreciation as used by respondent.

(2) Petitioner had a policy of paying its employees a bonus as additional compensation at the end of each year. For the years in question the bonuses aggregated $658 for 1919, $678 for 1920, and $395 for 1921. The said amounts should be allowed as deductions in the respective years as ordinary and necessary business expenses under section 234 (a) (1) of the Revenue Acts of 1918 and 1921.

(3) Petitioner claims by its amended petition that it is entitled to a deduction for 1921, in the amount of $20,500, as a reserve for bad debts. The evidence shows that at the close of the year 1921 petitioner went over its accounts receivable and made up a list of about 200 -accounts which were considered to be probably bad at that time. Because of the general depression in business conditions many of petitioner's debtors could not pay their debts during 1921 and petitioner considered the debts bad. However, a large percentage of those same debts were running accounts for advertisements, and during 1922 and 1923 petitioner collected a fair percentage of the debts contracted during 1921. Although a reserve of $20,500 was set up only $7,697.50 was actually charged against it. For the years 1919 to 1926, inclusive, petitioner's accounts receivable averaged $48,013.15 and its bad debts actually charged off during the same years averaged $6,038.63, which amounts to 12.5 per cent. The percentage of bad debts to accounts receivable as allowed by the Commissioner for 1921 is about 18 per cent. For the years 1919 to 1923, inclusive, the petitioner's gross income averaged $305,247.67 and its bad debts charged off during the same years averaged $5,390.16, which amounts to 1.7 per cent. The percentage of bad debts to gross income as allowed by the Commissioner for 1921 is about 2.5 per cent. The amounts of bad debts charged against petitioner's reserve for the years 1922 to 1926, inclusive, indicate that the large reserve set up in 1921 was not warranted. On December 31, 1926, the reserve account as set up on petitioner's books was terminated with a balance of over $14,000. The deduction of $7,770.15

as allowed by the Commissioner for bad debts for 1921 is reasonable and should be sustained.

(4) Petitioner claims that it is entitled to a deduction for the year 1919 of $3,556.34 as additional compensation voted to Sundine and McGlynn. The said sum represents the cost of cars purchased by petitioner for the use of its two officers. The resolution dated October 29, 1919, is the basis for petitioner's claim, but that resolution does not indicate when the services were rendered, nor does it indicate the period of time, one or more years, for which the additional compensation was voted paid in the form of cars purchased by petitioner in 1917. The testimony sheds no light upon the matter and in the absence of evidence showing in what year and for what year the additional compensation was paid, it may not be allowed as a deduction for 1919.

(5) The facts show that during the years in question McGlynn and Sundine used their cars for personal use as well as for the conduct of petitioner's business. There is no evidence as to what portion of the total operating expenses paid by petitioner were expended for such personal expenses which may not be allowed as an ordinary and necessary business expense and we are of the opinion that the amounts allowed by the Commissioner as petitioner's business expense for operation of officers' cars are reasonable and proper.

(6) We are satisfied from the testimony that it was necessary for petitioner to install the two telephones in question. The Moline Daily Dispatch was not a large newspaper and it was quite necessary for petitioner's customers and reporters to have a direct means of communication with the two men, McGlynn and Sundine, who directed all the affairs of petitioner. The two phones were used regularly for business night calls and the expense of maintaining such means of communication was an ordinary and necessary business expense for this petitioner. Petitioner should be allowed a deduction of $112 from gross income for each of the years 1919, 1920, and 1921.

(7) Apparently petitioner has waived the issue relative to the reduction of its invested capital by income and profits taxes. It appears from the deficiency letter appealed from that the Commissioner has prorated petitioner's prior years' taxes in accordance with his regulations, which action must be considered as correct under the provisions of section 1207 of the Revenue Act of 1926.

(8) The amount of $1,798.31 refund determined by the Commissioner to be due this petitioner for the year 1917, should be included in petitioner's invested capital for each of the years 1919, 1920, and 1921.

(9) The evidence is not all clear as to the ninth issue and we are unable to determine exactly what the facts are as to the inclusion or

exclusion of an amount of $5,772.77 accounts receivable in petitioner's invested capital. This issue seems to have become merged into petitioner's claim for a reserve of $20,500 for bad debts for the year 1921. The claim for the inclusion of $5,772.77 in invested capital for 1919, 1920, and 1921, must be disallowed for lack of proof.

(10) In March, 1920, petitioner purchased two Cadillac cars at a cost to it of $9,700 which cars were used by the officers and employees of petitioner in the conduct of its business. The cost of the cars was set up on the books in petitioner's automobile account and carried as a capital item for 1920 and also 1921. The purchase of the cars certainly entailed a capital expenditure and the amount of $9,700 should be included in petitioner's invested capital for the years 1920 and 1921.

(11a) The two accounts receivable, totaling $7,380, may not be included in petitioner's invested capital for the years 1919, 1920, and 1921, for the facts establish that the two so-called accounts receivable from McGlynn and Sundine were not in fact accounts receivable having any actual cash value. In 1911 the amounts in question were distributed as cash dividends and neither McGlynn nor Sundine ever intended to repay those amounts to the petitioner. They did not give petitioner their notes nor any other evidence of an indebtedness. McGlynn testified that the cash which represented accumulated profits, was distributed as dividends and that he did not understand how it got on the books as accounts receivable. The Commissioner properly excluded the said amount of $7,380 from petitioner's invested capital.

(11b) No evidence has been submitted as to the value, if any, over cost of " Other Assets Acquired " by petitioner at the time of its incorporation which alleged value petitioner claims should be included in its invested capital. This claim by petitioner must be denied.

(12) The claim made by the twelfth issue must be denied as no basis has been shown for the inclusion of any of those amounts in petitioner's invested capital.

*Judgment will be entered upon 15 days' notice, pursuant to Rule 50.*