HOLMES IVES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5646.    Promulgated December 23, 1926.

1. Under the facts, *held*, that petitioner is entitled to charge off as bad debts ascertained to be worthless certain advances made in behalf of a corporation.

2. Amount paid by petitioner to sales manager of a corporation of which petitioner was president *held* not deductible as a business expense.

3. Amount spent by petitioner for extra copies of a magazine for distribution to employees of a corporation of which he was president *held* not deductible as a business expense.

*A. D. Duncan, Esq.,* for the petitioner.
*D. D. Shepard, Esq.,* for the respondent.

This is a proceeding for the redetermination of a deficiency in income tax for the calendar years 1921 and 1922 in the amount of $505.40. Only a part of the deficiency is in controversy, as the petitioner admits that deductions claimed in his returns for miscellaneous expenses in 1921 and club dues in 1921 and 1922 were improper deductions. The questions for decision are: (1) Whether the petitioner is entitled to deduct funds advanced in behalf of a corporation in 1921 and 1922; (2) the amount of salary received by the petitioner in 1922; (3) whether petitioner is entitled to a deduction of an amount spent for magazines for the use of employees of a corporation in 1921.

### FINDINGS OF FACT.

The petitioner is an individual residing at Oakland, Calif. In 1921 he was president of the Silver Star Mining Co., a Nevada corporation capitalized at $1,000,000, with stock of the par value of $1 per share, of which the petitioner owned 1,000 shares, which was a part of the stock he received in exchange for mining claims located in Nevada. The Nevada property of the company was managed by F. A. Evans.

During the year 1921 the petitioner paid the manager Evans and deposited to the credit of the Silver Star Mining Co., subject to check by Evans, funds aggregating $1,959.47. These funds were used by Evans to pay expenses of developing the company's mining claims. During the year the petitioner purchased for the company a tent at a cost, with shipping charges, of $27.15, and a truck at a cost, including accessories and freight charges, of $615. On November 18, 1921, he paid a mining geologist the sum of $277 to cover expenses of an examination and report on the mining claims of the company. These advances and payments in behalf of the company during the year, aggregating $2,878.62, were made by the petitioner from his personal funds.

The mining geologist who examined the mining property of the Silver Star Mining Co. submitted to the petitioner a report dated October 22, 1921, wherein he concluded that the ore was confined to "bunches" too small to be profitably mined and advised against any further expenditures in the development of the claims.

At the close of the year 1921 the Silver Star Mining Co. had no assets other than the mining claims, which were unpatented.

On April 14, 1922, the petitioner paid Evans the amount of $134.90, representing the balance due for services rendered and supplies furnished the mining company in 1921, and some time during the year he paid at least $700 for assessment work done on the mining property.

The petitioner has not been reimbursed by the Silver Star Mining Co. for the expenditures he made in its behalf in 1921 and 1922. On August 20, 1924, a meeting of stockholders of the company was held at which there was authorized the issuance of 7 per cent notes to the petitioner for the funds he had advanced for the company. On the same date a directors' meeting was held at which the action taken at the stockholders' meeting was ratified. However, the notes were not issued, the petitioner being of the opinion that they would be of no value if they were issued. On July 20, 1925, a meeting of the directors of the company was held at which a resolution was passed instructing the treasurer to check the amount of the advances made by the petitioner and to issue to the petitioner the company's notes for each year's advances, including interest, attorneys' fees, and costs, the notes to run for sixty days and to bear interest at 7 per cent until paid.

In his income-tax returns for 1921 and 1922 the petitioner deducted as advances to the Silver Star Mining Co. the sums of $2,875.92 and $887.70, respectively. The deductions were disallowed by the Commissioner.

The petitioner was one of the organizers of the Coast Tire & Rubber Co., a California corporation, organized in August, 1919, and engaged in the manufacture of automobile tires and tubes. In 1921 and 1922 the petitioner was president and a director of the company and J. I. Pankratz was vice president and a director. Pankratz went to California at the suggestion of the petitioner and assisted in the organization of the corporation, later becoming its sales manager. It was understood between the petitioner and Pankratz that the latter would share equally with the petitioner in any proceeds from the company. In accordance with this understanding, the petitioner and Pankratz each received a portion of the original issue of stock and of a later increase in the stock. The company paid the petitioner a salary of $12,000 per year. Prior to 1921 Pankratz received no salary and the petitioner during that period gave Pankratz one-half of his salary, or $500 a month. For the years 1921 and 1922 Pankratz received from the company a salary of $10,000. In order to equalize their salaries for those years, the petitioner paid Pankratz for 1921 the sum of $1,066.68 by checks bearing various dates throughout the year, and for 1922 he paid Pankratz the sum of $1,000. In his income-tax return for 1922 the petitioner reported his salary as $11,000. The books of the Coast Tire & Rubber Co. show the petitioner's salary for that year as $12,000, which is the amount of salary used by the Commissioner in his computation of the deficiency.

In 1921 the petitioner purchased 48 copies of a certain issue of the magazine "System," in addition to his own subscription, at a cost of $12. That issue contained an article dealing with the administration of the Ford plant which the petitioner felt would be beneficial to employees of the Coast Tire & Rubber Co. to whom he distributed the 48 copies. The amount of $12 spent for magazines was claimed as a deduction by the petitioner as a business expense in his income-tax return for the year 1921, and was disallowed by the Commissioner.

### OPINION.

ARUNDELL: We are satisfied that the amounts advanced by petitioner to the Silver Star Mining Co. were loans to that company and not further investments made by him as a stockholder. His stock ownership therein constituted less than one-tenth of one per cent of the outstanding stock. Being so convinced, it is not our province to inquire into the wisdom of the loan; it is only necessary for the petitioner to establish the fact that the amounts advanced were ascertained to be worthless and charged off within the taxable year. At the close of 1921 the corporation had no assets other than its mining claims, which were unpatented and held only by right of

location. In October, 1921, a mining geologist rendered a report giving it as his opinion, after an examination, that the corporation's mining claims could not be developed profitably. The petitioner testified that in the face of that report it would be impossible to raise money for the further development of the claims. Money spent to secure a judgment against the company under such circumstances would have been a useless expenditure. We feel satisfied that the petitioner has established the worthlessness of the debt in 1921, and it follows that he should be permitted to charge it off. The fact that he had hopes that some day something might turn up whereby he might recover the money is not sufficient to prevent the charging off of a debt which in fact was worthless in the taxable year. The amounts sought to be charged off in 1922 represented in part obligations incurred in the previous year, and the balance was to cover the assessment work necessary to hold the mining claims. As stated by petitioner, perhaps he was " sending good money after bad," but we do not believe the deduction is to be denied because the taxpayer may not have exercised good business judgment. The amounts advanced in 1922 are proper deductions for that year. See *Appeal of Midland Coal Co.*, 1 B. T. A. 311.

The evidence is clear that the petitioner received a salary of $12,000 from the Coast Tire & Rubber Co. for the year 1922. He accordingly erred in reporting only $11,000 of that amount. The question for decision is whether the amount of $1,000 turned over to Pankratz is an allowable deduction from the petitioner's income. Testimony was offered to the effect that the $1,000 was paid in accordance with an understanding between the two that Pankratz was to share equally with the petitioner in any profits that might be realized from the venture of organizing and promoting the Coast Tire & Rubber Co. The two men had been friends for a number of years and associated in business together before coming to California, and we believe these facts were the impelling motive that prompted the agreement for a division of the taxpayer's income with Pankratz. Under such circumstances, we can not regard the amount claimed as an ordinary and necessary business expense.

The petitioner claims as a deduction for 1921 the amount of $12 which he spent for extra copies of a magazine containing an article on the administration of the Ford plant, which he distributed to employees of the Coast Tire & Rubber Co., of which he was an officer. We regard the expenditure as purely personal and not as an allowable business expense.

*Judgment will be entered on 15 days' notice, under Rule 50.*