**W. J. LAZYNSKI, Jr., and Erma Lazynski, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 59–C–19.**

United States District Court
E. D. Wisconsin.

Feb. 16, 1962.

Russell Darrow, Milwaukee, Wis., for plaintiffs.

Bruno Lederer, Tax Division, Department of Justice, Washington, D. C., James B. Brennan, U. S. Atty., Milwaukee, Wis., for defendant.

TEHAN, Chief Judge.

This is an action pursuant to § 1346 (a) (1), Title 28 U.S.C. for refund of taxes allegedly erroneously assessed and collected for the taxable year 1951. Plaintiff, W. J. Lazynski, Jr. (hereinafter referred to as taxpayer) and his wife, Erma Lazynski, seek the sum of $1629.11 with interest thereon in the amount of $488.77, for a total of $2117.88.

In 1951 taxpayer was engaged in various construction businesses in Milwaukee including the Ideal Building Investment Corporation (hereinafter referred to as I. B. I.), the L and L Service Company, a corporation, the Villard Machinery Company, a partnership, and W. J. Lazynski, Inc. Taxpayer was the president of I. B. I. and owner of 40% of the stock of that corporation. The remaining stockholders were David Wilkinson, vice-president (30%), A. B. Cain, secretary and treasurer (29.8%), and John Powickoski (.2%). Taxpayer was unable to devote more than 10 to 15% of his time to I. B. I. business due to his other activities and in the main, he left the supervision and control of I. B. I. to Wilkinson.

In 1949, I. B. I. entered into a contract with the Wisconsin Department of Public Welfare for the construction of a sewerage treatment plant at the Southern Colony and Training School, Union Grove, Wisconsin (hereinafter referred to as the Union Grove project). I. B. I. furnished a full performance bond in connection with this contract. The only signature appearing on such contract on behalf of I. B. I. is that of Wilkinson as vice-president of the corporation. I. B. I. sublet all of the plumbing work on the Union Grove project to the Heiden Plumbing Company, a business owned by Alfred W. Heiden. After the project had been completed, and after I. B. I. had received payment from the State Department of Public Welfare, the taxpayer received a telephone call from Alfred Heiden during which Heiden stated that he had not been paid on the Union Grove project, and that if he was not paid, he would have no alternative but to file on the bond. Taxpayer told Heiden that "he shouldn't bother about this thing any more," that he, the taxpayer would see to it that he received payment.

On November 16, 1951, a meeting of the shareholders and directors of the corporation was held at taxpayer's request. Wilkinson, Cain, the taxpayer, Cutler, the corporation's attorney, Foss, its accountant, and Heiden, were present at the meeting. The purpose of the meeting was to ascertain the obligations of the corporation. At the meeting it was determined that $14,000 was owing to Heiden which could not be paid out of the assets of the corporation. It was agreed that the three major stockholders would pay Heiden from their personal funds in amounts approximately proportionate to their stockholdings. Thus taxpayer was to pay 40%, and Wilkinson and Cain 30% each. By a check dated November 16, 1951, taxpayer paid Heiden $5000.00, and by a check dated November 23, 1951, taxpayer paid the remaining $823.00 in discharge of his 40% of the debt. According to Heiden he eventually received full payment on his claim. The I. B. I. corporation was dissolved on November 16, 1951.

Taxpayer failed to list the payments made to Heiden in his income tax return for 1951 filed in March of 1952. Subsequently on February 7, 1955, taxpayer filed a claim for refund with the District Director of Internal Revenue in which he claimed that the payments made to

Heiden were additional investments by him in the I. B. I. corporation. He asserted that these investments gave rise to an increased net long term capital loss upon dissolution of the corporation. The summary of the taxpayer's claim and the Government's replies were as follows:

(Paragraph from claim of taxpayer)

"The cause of this correction in tax liability is due to an additional investment by the taxpayer who was a stockholder in the I. B. I. Corporation in the amount of $5823.00 which resulted in an increase of a net long term loss. The I. B. I. Corporation was dissolved on November 16, 1951."

(Letter of August 3, 1956 from the District Director to taxpayer enclosing "No Change Report" contained this paragraph:)

"The claim for $5823.00 designated as additional investment in the I. B. I. Corporation has been rejected for the reason that the I. B. I. Corporation was insolvent at the time payments were made. There was no legal obligation for payment on your part, and voluntary payments made by you would not give rise to a deduction as an additional investment in the corporation nor a bad debt as provided in Section 166 of the Internal Revenue Code."

(Paragraph from letter of December 31, 1956 from the Appellate Division disallowing claim for refund after protest of action taken by the District Director)

"It has been concluded that your claim for refund should be disallowed in full on the grounds that you were not legally liable to make the payment which you made on behalf of the I. B. I. Corporation and that accordingly no deduction is allowable with respect thereto under any provision of the Internal Revenue Code. The case will be closed on the foregoing basis."

By letter dated February 1, 1957, notice of disallowance in full of his claim was conveyed to taxpayer by registered mail.

"Careful consideration has been given to your claim as described above, and upon the facts and circumstances in the case, it has been determined that it is not allowable. Accordingly your claim has been disallowed in its entirety."

On the basis of the pre-trial briefs and the discussion at the pre-trial conference, this court assumed that the section of the code relied on was § 23(e) of the Internal Revenue Code of 1939, 26 U.S.C. § 23(e), which provides for a deduction for losses sustained during the taxable year, not compensated for by insurance or otherwise.[1] However, on the trial the taxpayer asserted the right to a refund under § 23(k) (4),[2] providing for a nonbusiness bad debt deduction, as construed in the case of Putnam v. C. I. R. (1956) 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144.

The Government timely objected, maintaining that the taxpayer was es-

---

1. "(e) Losses by individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—
    "(1) if incurred in trade or business; or
    "(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * *."

2. "(k) Bad debts.
    "(1) General rule. Debts which become worthless within the taxable year; * * *.

"(4) Non-business debts. In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term 'non-business debt' means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business."

topped from asserting a claim for refund on any ground other than § 23(e) in view of his failure to apprise the Government of this ground at any time prior to trial. The trial proceeded subject to objection, and thereafter the court directed each of the parties to submit a memorandum on this point.

The Government relies upon § 3772 of the Internal Revenue Code of 1939, 26 U.S.C. § 3772, which makes the filing of a claim for refund a statutory prerequisite to the jurisdiction of the District Court in suits for refund of taxes and provides for regulations by the Commissioner delineating the contents of a proper refund claim.[3]

The pertinent regulations provide (1961 Federal Tax Regulations Vol. 2, Page 767, 301.6402–2(b) (1)):

> "No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. *A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit."* (Emphasis ours.)

▇ In respect to the sufficiency of notice of refund claims, it appears that while the courts have construed this section rather liberally, they have held that there must be at least a showing that the claim was sufficient to advise the Commissioner concerning items as to which the taxpayer claims error and the grounds upon which the taxpayer makes his claim. If the Commissioner understands the grounds and deals with the claim upon the basis of his understanding, the claim is sufficient. Keneipp v. Commissioner (1950) 87 U.S.App.D.C. 242, 184 F.2d 263, 267. As a corollary to this rule it should be stated that "it is not enough that in some roundabout way the facts supporting the claim may have reached him. The Commissioner's attention should have been focused on the merits of the particular dispute." Angelus Milling Company v. Commissioner (1945) 325 U.S. 293, at 297, 65 S.Ct. 1162, at 1165, 89 L.Ed. 1619.

▇ In the case at hand the Commissioner apparently examined the claim and the stated grounds upon which it was based and made his determination that there was no right to a deduction under either the loss section or under the bad debt section of the code. The stated grounds advanced by the taxpayer offered no proof or even suggestion of the existence of documentary evidence of contractual liability. The express basis for the rejection of the claim by the Commissioner was the lack of any showing that taxpayer had acted under a legal obligation in making the payments in question. In the absence of a legal obligation, no deduction is allowed to a taxpayer for advances made to a failing corporation to provide full payment to creditors under either the loss section or under the bad debt section of the code. Young v. Commissioner (C.A.1, 1941) 120 F.2d 159; Allen v. Commissioner (C.A.7, 1959) 283 F.2d 785.

Upon the trial of the case, the court received, subject to the objections of

---

3. "§ 3772. Suits for refund
"(a) Limitations
"(1) Claim. No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."

the Government, evidence attempting to show the existence of a legal liability on the part of the taxpayer arising out of (1) a general contract of indemnity with the Continental Casualty Company, and, (2) the operation of § 289.536, Wisconsin Statutes, which establishes a trust fund for materialmen and subcontractors for all monies paid into the hands of a contractor for public improvements.

In respect of the first point that an obligation arose out of the general contract of indemnity, the evidence discloses that a general contract of indemnity was signed and filed by the taxpayer with the Continental Casualty Company, and that the Continental supplied a full performance bond to the I. B. I. on the Union Grove project, which was signed by Wilkinson as vice-president of I. B. I. It was the practice that a written application be made to Continental, through its local agency before any bond issued, but the agency representative stated that a search had failed to reveal the application and he himself had no independent recollection as to who signed it. The taxpayer also had no recollection as to whether or not he signed the application on behalf of I. B. I., in which he was a minority stockholder.

Passing for the moment the probative effect of the evidence so adduced, we give first consideration to the question of whether the reception in evidence of proofs offered, to show a guaranty by Laszynski of the corporate bond on the Union Grove project, would prejudice the Government in view of taxpayer's admission that the Government had no knowledge of a claim based on the existence of the general contract of indemnity prior to trial.

In a somewhat analogous tax refund case in this district, Bouchard v. United States (E.D.Wis., 1956) 143 F.Supp. 5, Judge Grubb considered and rejected the objection of the Government that the claim for refund did not correspond to the pleadings and proof offered at the trial. Judge Grubb based his ruling upon the facts that the Government had

discovered all of the discrepancies between the claim for refund and the claims on the trial in its own audit, and that subsequent thereto, the taxpayer incorporated these new factual elements into his proofs at trial. It was the court's finding that neither prior to trial nor at the time of trial was the Government taken by surprise or unprepared.

There is no basis for a like finding of no prejudice in the case at hand. The claim filed by the taxpayer makes no reference to the general contract of indemnity, nor does the complaint refer to that agreement. No attempt has been made to amend either the claim or the complaint to include this significant factual element. The existence of a general contract of indemnity is not even mentioned in taxpayer's pre-trial brief, nor is there any explanation as to why with reasonable diligence it could not have been found, and notice thereof given to the Government to the end that it might investigate and prepare its defense. To admit evidence which constitutes completely new grounds for a claim under these circumstances would not only be highly prejudicial and inequitable, but do violence to the pertinent statutes and regulations.

For the same reason we must reject taxpayer's assertion, raised for the first time in his post-trial briefs, that he is entitled to a refund for the payments made to Heiden, under the provisions of § 23(a) (1) (A) of the Internal Revenue Code of 1939, which provides for deduction of business expenses incurred during the taxable year.

In respect, however, of the general contract of indemnity, the court will offer its gratuitous opinion that the evidence offered, if received, would be insufficient to establish any legal liability between the taxpayer and the bonding company on the Union Grove project.

The second contention of the taxpayer is that a legal liability upon him arose out of the operation of § 289.536, Wisconsin Statutes. Such section, as stated before, establishes a constructive

trust fund for materialmen and subcontractors for all monies paid into the hands of the contractor for public improvements. This argument can be dismissed summarily with the statement that there is no showing on the part of the taxpayer that public monies coming into the hands of I. B. I. were used for any purpose other than the paying of the claims on such public improvement, nor is there any showing that any of such funds came into taxpayer's possession upon which a constructive trust could be imposed. Murphy v. National Paving Co. (1938) 229 Wis. 100, 281 N.W. 705.

For the reasons above set forth, the action of the taxpayer must be dismissed.

The foregoing Opinion shall stand as and for Findings of Fact and Conclusions of Law within the meaning of Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.

