HERBERT JENKINS AND BERTHA J. JENKINS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jenkins v. Commissioner
Dockets Nos. 34713-83; 17452-84.
United States Tax Court
T.C. Memo 1988-292; 1988 Tax Ct. Memo LEXIS 320; 55 T.C.M. (CCH) 1215; T.C.M. (RIA) 88292; June 30, 1988. Stanley L. Ruby and Howard L. Richshafer, for the petitioners. Jennifer H. Decker, for the respondent. *323 PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: In these consolidated cases, respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax
Section
Section
Section
Taxable Year
Deficiencies
6653(a) [1]
6653(a)(1)
6653(a)(2)
1979
$ 1,355.34
$ 67.77
-
-
1980
1,560.43
78.02
-
-
1981
1,454.33
$ 72.72
50% of the interest
due on $ 1,454.33
1982
1,013.00
50.65
50% of the interest
due on $ 999.00
These consolidated cases present a multitude of substantiation issues for a bookkeeping and tax service was formerly operated by petitioner Herbert Jenkins, who turned the activity over to his wife, petitioner Bertha Jenkins, after he became employed by the Internal Revenue Service as a revenue agent. After concessions, the issues to be decided are: (1) Whether during the years *324 before the Court the bookkeeping and tax service was "an activity not engaged in for profit" under section 183(a); (2) Whether certain items are business expenses deductible under section 152(a) or personal, living or family expenses nondeductible under section 262; (3) Whether petitioners have substantiated various Schedule C deductions and employee business expense deductions; and (4) Whether petitioners are liable for additions to tax under section 6653(a) or section 6653(a)(1) for each of the years and also under section 6653(a)(2) for 1981 and 1982 for negligence or intentional disregard of rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, and the exhibits attached thereto are incorporated herein by this reference. Petitioners Herbert Jenkins and Bertha J. Jenkins resided in Cincinnati, Ohio at the time of the filing of their petitions. Petitioners filed their joint Federal income tax returns (Forms 1040) for the taxable years 1979, 1980, 1981, and 1982 with the Internal Revenue Service Center in Covington, Kentucky. About 1968 Mr. Jenkins began a bookkeeping *325 and tax service business. He was not then but he later became a certified public accountant licensed in the State of Ohio. In 1970 Mr. Jenkins left the bookkeeping and tax service business to go to work for the Internal Revenue Service, where he served as an internal revenue agent from 1970 through 1982. He graduated from the University of Cincinnati around 1976 or 1977. He then attended Xavier University, receiving an MBA in business finance in 1982. During his first few years with the Service, Mr. Jenkins examined tax returns of smaller businesses, including sole proprietorships. He later audited medium to large corporations. His training as a revenue agent included an introductory course on auditing and an advanced course on corporations and partnerships, and instructor training. While employed by the Service, Mr. Jenkins also trained new revenue agents. When Mr. Jenkins accepted the job with the Internal Revenue Service in 1970, he could no longer have outside employment and he turned his bookkeeping and tax service over to his wife. The business activity was thereafter called the Bertha Jenkins Bookkeeping and Tax Service. [2] Except for working for her husband, Mrs. *326 Jenkins had no experience as a bookkeeper or in operating any type of business. She was not an accountant, although in 1974 she signed at least one contract as "Bertha Jenkins, Accountant." She does not have a college degree. The only formal training she has had was a course on Federal taxes at the University of Cincinnati, and a course on principles of accounting at the University of Cincinnati that she took in 1970. Later she also had training with the city on nonprofit organizations. Most of Mrs. Jenkins' clients were small minority businesses, such as taverns or barber shops, and nonprofit community organizations involved with FHA projects. During the time Mrs. Jenkins ran her bookkeeping and tax service, she maintained as her only place of business an office in a den in her home. At least *327 during the years before the Court, she kept no business books, payroll records, cash journals, or ledgers of accounts payable or accounts receivable for the business. The only evidence of any business records that petitioners presented at trial were some contracts with clients dated in 1974 and some billing invoices to clients also dated in 1974. During the years before the Court, Mrs. Jenkins never sent out any bills to clients, and there is no persuasive evidence that she had any clients in those years. The materials petitioners presented as her business records are checks, charge slips, and cash register receipts which are generally uninformative as to the nature of the expense or its relationship to any business activity. The Bertha Jenkins Bookkeeping and Tax Service does not own any assets other than perhaps a desk, chair, some shelves, file cabinets, and a typewriter. The checking account for the bookkeeping and tax service was Mrs. Jenkins' personal checking account. [3]
*328 Petitioners filed a Schedule C for the Bertha Jenkins Bookkeeping and Tax Service for each of the taxable years 1970 through 1982. Mr. Jenkins prepared these Schedule C's from information his wife gave him. The following table reflects the net gains and losses reported for the Bertha Jenkins Bookkeeping and Tax Service on the Schedule C's: Costs of Goods
Gross
Sold and
Taxable Year
Income
Deductions
Net Gains and (Losses)
1970
$   809.00
$    546.77
$    262.23 1971
3,083.06
2,749.88
333.18 1972
5,714.68
* 5,169.57
545.11 1973
8,612.31
* 9,222.49
(610.18)
1974
8,086.02
7,802.89
283.13 1975
5,427.00
6,949.00
(1,522.00)
1976
4,920.74
6,968.61
(2,047.87)
1977
4,029.33
* 10,845.52
(6,816.19)
1978
3,757.40
9,623.34
(5,865.94)
1979
2,940.00
8,647.40
(5,707.40)
1980
1,999.00
* 8,213.87
(6,214.87)
1981
2,055.00
* 6,685.02
(4,630.02)
1982
2,155.00
4,944.92
(2,789.92)
*329 When Mrs. Jenkins took over the business in 1970, there were four or five clients. Between 1970 and 1974 she had over 42 clients, but the record does not show the maximum number of clients she had in any one year. Mrs. Jenkins claims that between 1978 and 1979 the Bertha Jenkins Bookkeeping and Tax Service began to lose clients as well as a substantial amount of revenue, and that the clients that were lost either went out of business or went with certified public accounting firms. The gross income figures reported on petitioners' Schedule C's do not bear out this contention, and any loss of clients and income occurred earlier and over a longer period of time. [4]
*330 Petitioners claimed the following deductions on their Schedule C's during the years 1975 to 1982: >100> >101> 1975
1976
1977
1978
Costs of goods sold
$ 1,715.00
$ 1,507.42
$ 1,302.78
$ 1,133.94
Deductions
Advertising
-
25.68
30.00
-
Bank charges
27.00
27.00
29.00
14.49
Car and truck
expenses **
851.00
1,067.69
1,433.55
1,376.98
Depreciation
933.00
663.30
3,376.43
2,618.69
Dues and
publications
-
-
-
-
Insurance
255.00
277.29
540.00
356.18
Interest on business
indebtedness
391.00
162.20
310.37
680.55
Office supplies **
24.00
-
-
13.40
Postage
16.00
25.00
98.45
46.15
Repairs
182.00
391.62
1,718.97
-
Telephone
132.00
126.00
162.00
162.00
Travel and
entertainment
288.00
199.90
185.50
101.75
Wages
1,585.00
2,319.61
2,300.00
3,052.21
Gifts
25.00
71.15
65.00
14.00
Parking
25.00
35.00
25.00
28.00
Miscellaneous
-
69.75
119.25
25.00
Rent on business
property
500.00
-
-
-
Totals:
$ 6,949.00
$ 6,968.61
*$ 11,696.30
$ 9,623.34
1979
1980
1981
1982
Costs of goods sold
$ 1,507.79
$   929.87
$ 1,370.19
595.96
Deductions
Advertising
22.30
22.00
21.00
21.12
Bank charges
60.00
94.26
95.00
30.00
Car and truck
expenses **
1,198.70
1,061.50
761.00
749.41
Depreciation
1,912.98
1,094.21
539.00
1,589.00
Dues and
publications
51.35
51.00
203.33
6.48
Insurance
355.21
587.79
263.11
234.00
Interest on business
indebtedness
680.55
680.55
680.55
-
Office supplies **
76.95
404.20
185.01
69.95
Postage
31.60
45.00
-
-
Repairs
463.32
1,004.33
202.98
707.00
Telephone
150.00
36.00
-
37.50
Travel and
entertainment
161.62
143.25
68.56
24.18
Wages
1,890.03
2,000.00
2,300.00
786.05
Gifts
25.00
25.00
19.08
-
Parking
35.00
35.00
-
35.00
Miscellaneous
25.00
-
37.00
38.48
Rent on business
Property
-
-
-
20.79
Totals:
$ 8,647.40
*$ 8,213.96
*$ 6,745.81
$ 4,944.92
*331 In the period from 1970 to 1973, Mrs. Jenkins paid wages to certain unrelated individuals to perform services for the bookkeeping and tax service. After 1973, she no longer hired any outside help. Beginning in 1974, Mrs. Jenkins claimed deductions for wages paid to her daughters, Karen and Beverly. In 1974 Karen was about 17 and Beverly was about 9 years old. During the years before the Court, Mrs. Jenkins was employed outside the home. In 1979 she worked part-time for CBS Temporary Agency where she did filing and bookkeeping. In 1980, 1981, and for part of 1982, she was employed full time at PREP, Inc. (Preparation Recruitment Employment Agency, Inc.). For the rest of 1982 she was employed full time by a law firm as a receptionist/librarian. During the years before the Court, petitioners *332 deducted amounts for wages allegedly paid to their daughters, Beverly and Karen. In 1979 petitioners deducted $ 1,890.03 in wages, with $ 125 of this claimed as wages to Karen and $ 1,765.03 as wages to Beverly. Karen was 22 that year, finished school and left home; Beverly was 14. In 1980 petitioners deducted $ 2,000 as wages allegedly paid to Beverly. In 1981 petitioners deducted $ 2,300 as wages allegedly paid to Beverly. In 1982 petitioners deducted $ 786.05 as wages allegedly paid to Beverly. During all the years before the Court, Beverly was a minor child (aged 14 to 17) living at home with petitioners who claimed her as a dependent on their tax returns. For the taxable year 1979, petitioners also claimed Karen as a dependent. During the taxable years in issue Beverly received no allowance from petitioners other than the amounts they gave her and deducted as wages. She received no more than $ 780 in cash ($ 15 per week), which she had to use for her school lunches and other expenses. The other amounts deducted as wages paid to her were furnished to Beverly only in the form of purchases of clothing and other items and payments for dry cleaning and other items. Beverly *333 had no special skills or expertise in business. She took a typing course at school. Beverly's only training in accounting or bookkeeping was a high school accounting course that she took in 1982. Mrs. Jenkins did not pay Beverly or Karen on a regular payroll period basis. She did not maintain any payroll records or any other records to reflect the hours or rates of the wages she allegedly paid to the girls. No contemporaneous records of any payments in goods were kept and no agreement (written or oral) existed with either daughter. Neither Beverly nor Karen had any set hours and neither girl signed in or out or prepared any other record to show the number of hours, if any, they actually worked. [5] The amounts deducted as wages were not based on a determination of how much the bookkeeping and tax service could pay each girl and still achieve a profit. In addition, Mrs. Jenkins never supervised the girls or examined any documents to determine how long it should have taken the girls to do the work. She did not maintain any records specifying the clients for whom each girl did work. See n.5, supra.
*334 From 1981 on Beverly started working at a job outside the home while attending school. In 1981 Beverly had a part-time job at Northern Hills Fashions from 5:00 to 9:00 p.m. each night while attending school full time. [6] In 1982 Beverly worked part time from 1:00 to 6:00 p.m. each day at Fifth Third Bank, five days a week, while attending school part time. Mrs. Jenkins prepared Federal Transmittal of Income and Tax Statements (Forms W-3) for the years 1979 through 1981 and provided Beverly with Federal Employee Wage Statements (Forms W-2), for the years 1979 through 1982. [7] Beverly included most of the amounts designated in petitioners' Schedule C as income on her 1981 and 1982 Federal income tax returns, Forms 1040A, as well as the income from her part-time jobs, when she filed for a refund of taxes withheld from her part-time jobs. Beverly was not required to pay any income tax in 1981 and received a refund of the taxes withheld by her employer, Northern Hills Fashions. In 1982 Beverly was required to pay $ 20 in income tax but was *335 refunded $ 210.07 of the taxes withheld by her employer, the Fifth Third Bank. In 1982 petitioners deducted $ 786.05 as wages paid to Beverly but only listed $ 700 as wages paid on the W-2 form from the Bertha Jenkins Bookkeeping and Tax Service, and Beverly reported on her tax return only the $ 700 figure. Beverly was not required to file Federal income tax returns in 1979 or 1980. The amounts deducted as wages allegedly paid to Beverly for each of the taxable years in issue represent, in large part, amounts expended by petitioners for Beverly's lunch money, clothing and dry cleaning. For example, in 1981 petitioners claimed as wages paid to Beverly checks made out to dry cleaners (mostly Cinderella Cleaners) written by Mr. or Mrs. Jenkins in the total amount of $ 321.65. [8] In addition, most of the checks petitioners introduced as evidence of wage payments to Beverly or Karen were checks payable to cash or to third parties. Many of the checks were written on Mr. and *336 Mrs. Jenkins' joint personal checking account. The cash register receipts used as substantiation for wages did not specify that they were for wages but instead were charges at stores where Beverly, Karen, Mr. Jenkins, and Mrs. Jenkins did their personal shopping. Often the charge accounts were in Mr. Jenkins' name and the charge slips were signed by him. Among the receipts and canceled checks produced to substantiate wages allegedly paid to Beverly were a receipt marked "Bev-Birthday," a 1980 check marked for "Karen Jenkins," 1980 checks made out to Karen Jenkins, a receipt for a man's coat, and a receipt for men's sportswear. The amounts of wages deducted on Mrs. Jenkins' Schedule C's and the percentage of gross income represented by such wage deductions were as follows: Wages as
a Percentage
Year
Gross Income
Wage Deductions
of Gross Income
1970
$   809.00
$   116.93
14.45%
1971
3,083.06
489.10
15.86 1972
5,714.68
693.85
12.14 1973
8,612.31
751.55
8.72 1974
8,086.02
1,590.05
19.66 1975
5,427.00
1,585.00
29.20 1976
4,920.74
2,319.61
47.13 1977
4,029.33
2,300.00
57.08 1978
3,757.40
3,052.21
81.24 1979
2,940.00
1,890.03
64.29 1980
1,999.00
2,000.00
100.05 1981
2,055.00
2,300.00
111.92 1982
2,155.00
786.05
36.47 *337 After her daughters allegedly began working for the Bertha Jenkins Bookkeeping and Tax Service in 1974, the deduction for the wages allegedly paid to them rose from 19.66 percent of the total gross income to 111.92 percent, falling back to 36.47 percent in 1982 after the tax audit had commenced. On Schedule C of their Federal income tax returns for each of the taxable years 1979, 1980, and 1981, petitioners also took depreciation, gas and oil, and repair deductions on Mrs. Jenkins' 1977 Lincoln Continental Mark V automobile. Petitioners did not elect to use standard mileage rates for the business use deductions for Mrs. Jenkins' automobile but claimed that they deducted Mrs. Jenkins' actual expenses. On the Schedule C of their 1979 Federal income tax return, petitioners computed the deductions relative to Mrs. Jenkins' automobile by claiming five different percentages of business use. Petitioners claimed 85 percent business use when computing their $ 355.21 deduction for automobile insurance; 70 percent business use when computing their $ 1,061.20 deduction for gas and oil; 82 percent business use when computing their $ 463.32 deduction for automobile repairs; 90 percent *338 business use when computing their $ 137.50 deduction for miscellaneous automobile expenses; and 100 percent business use when computing their $ 1,912.98 deduction for automobile depreciation. [9]
On Schedule C of their 1980 Federal income tax return, petitioners computed the deductions relative to Mrs. Jenkins' automobile by claiming three different percentages of business use. Specifically, petitioners claimed 57 percent business use when computing their $ 1,061.56 deduction for gas and oil; 62 percent business use when computing their $ 1,094.21 deduction for automobile depreciation; 75 percent business use when computing their $ 1,004.33 deduction for automobile repairs; and 75 percent business use when computing their $ 587.79 deduction for *339 automobile insurance. [10]
On Schedule C of their 1981 Federal income tax return, petitioners computed the deductions relative to Mrs. Jenkins' automobile by claiming two different percentages of business use. Specifically, petitioners claimed 33 percent business use when computing their $ 401 deduction for gas and oil and 40 percent business use when computing their $ 402 deduction for automobile depreciation, their $ 263.11 deduction for automobile insurance, and their $ 202.98 deduction for automobile repairs. [11]
On Schedule C of their 1982 Federal income tax return, petitioners deducted $ 749.41 for car and truck expenses, $ 490 for automobile depreciation, $ *340 234 for automobile insurance, and $ 707 for automobile repairs. Respondent disallowed 100 percent of the deductions for Mrs. Jenkins' automobile. The parties have stipulated that Mrs. Jenkins' car was driven a total of 15,000 miles in 1979; 18,300 miles in 1980; 12,200 miles in 1981; and 11,500 miles in 1982. Mrs. Jenkins used her car to commute to and from jobs outside the home. Petitioners' daughter, Beverly, also drove Mrs. Jenkins' car occasionally for her own personal use. Petitioners did not maintain a contemporaneous log to record the total business miles or maintain any other type of books or records to establish the number of personal or business miles driven by Mrs. Jenkins for any of the taxable years in issue. Petitioners did not retain their receipts or slips for the purchase of gas and oil for Mrs. Jenkins' car during the years in question. Petitioners did not maintain any records to show the average miles driven per gallon used by Mrs. Jenkins' automobile or the average cost per gallon of the gasoline she used. In calculating the deduction for gas and oil expenditures in each taxable year, Mr. Jenkins subtracted from the total number of miles driven on his *341 wife's car for the year an estimate of the personal miles she had driven, which included travel time from home to her jobs outside the home and weekend mileage, to find the business mileage. Mr. Jenkins then reduced the business mileage he found in 1979, 1980, and 1981 by anywhere from 3 to 20 percent to obtain the net business mileage. He divided this figure by an estimate of the number of miles per gallon on Mrs. Jenkins' car and multiplied this amount by his estimate of the average price per gallon of gas for each year in question. There is no probative or persuasive evidence in the record to support any of these estimates. Petitioners conceded that they included for automobile depreciation purposes the cost of a Genie garage door opener, which was used by both petitioners each time they used the garage. In 1981 petitioners deducted as part of the costs of goods sold a new circuit board for the Genie. For each of the taxable years 1979, 1980, and 1981, petitioners took a deduction on their Schedule C for depreciation of a home office. Respondent agrees that if the Court determines that Mrs. Jenkins was engaged in the bookkeeping and tax service for profit and that the den was *342 a home office for the Bertha Jenkins Bookkeeping and Tax Service, then petitioners are entitled to deduct $ 101 for each of the taxable years for depreciation relative to an office in the home. Clients of the Bertha Jenkins Bookkeeping and Tax Service did not come to petitioners' home during the years before the Court. In addition, petitioners' daughter, Beverly, used the den as a study and occasionally used the typewriter in the room if no one was using the den. Petitioners also took deductions on their Schedule C, specifying that they were for office supplies and the costs of goods sold. On their Schedule C's for the years before the Court, petitioners deducted as costs of goods sold and office supplies the following amounts: Year
Costs of Goods Sold
Office Supplies
1979
$ 1,507.79
$  76.95
1980
929.87
404.20
1981
1,370.19
185.01
1982
595.96
69.95
However, most of the items claimed as costs of goods sold were also various items identified as "office supplies." For each taxable year, Mrs. Jenkins marked the majority of the personal checks and cash register receipts with an "OS" for office supplies and *343 only on a small number of the items purchased did she actually detail what the items were. Mrs. Jenkins did not keep a general ledger or any other contemporaneous record in which to record alleged purchases of office supplies or other purchases for the business. Petitioners' substantiation for the vast majority of the amounts deducted as costs of goods sold consisted of cash register receipts bearing no information as to what was purchased, charge slips bearing no information as to what was purchased beyond "general merchandise," and checks written on Mrs. Jenkins' personal checking account and on petitioners' joint personal checking account generally bearing no information as to what items were purchased. These purchases were made at various department and discount stores where Mr. Jenkins, Mrs. Jenkins, and Beverly also shopped for personal items. In addition, some of the expenses claimed as costs of goods sold were clearly misclassified, including a dress and jewelry labeled for Beverly, a coat for Karen, and a 1979 check for Karen's student loan. Of the canceled checks, cash register receipts, and charge slips offered by petitioners to substantiate costs of goods sold, *344 those that bore any information as to the item purchased disclosed a number of personal or family items or other questionable items. Among the items to substantiate 1979 costs of goods sold were receipts for purchases of automobile supplies, drugs, and candy, a charge slip labeled paint for office, and receipt dated February 9, 1963. Among the items to substantiate 1980 costs of goods sold were purchases of draperies, sheers, paint, a picture, and a shelf. Among the items to substantiate 1981 costs of goods sold were a large number of items allegedly purchased for the office as follows: Throw rug
$ 21.09
File cabinet
39.22
Divider
6.18
Storage box
23.20
Bulletin board
20.89
Shelves
14.07
Shelves
14.43
File cabinet
27.29
File box
20.82
Shelves
10.50
Veneer panel
15.83
Electric lighter
4.10
Processing photos--
(Office pictures)
39.22
Again in 1981 the items to substantiate costs of goods sold included automobile parts and accessories, dresses and jewelry for Beverly, and items of men's apparel. Respondent agrees that if the Court determines that Mrs. Jenkins was engaged in the bookkeeping and tax service for profit, then certain *345 items of expense have been substantiated. Respondent essentially treats as substantiated those items for which there were receipts that specified what the item purchased was. Those amounts deemed substantiated by respondent are as follows: Year
Cost of Goods Sold
Office Supplies
1979
$ 361.34
$ 9.15
1980
174.72
-
1981
511.00
-
These amounts in 1979 and 1980 were primarily for file folders, adding machine tapes, payroll books, and other office paper products. In addition to such paper items, the amount for 1981 included some of the purchases such as file cabinets, file boxes, and the bulletin board. Many of the purchases claimed by petitioners as costs of goods sold were in fact items purchased for family or personal use. Respondent disallowed petitioners' deduction of $ 150 as a telephone expense in the taxable year 1979. Petitioners maintained five telephones, with two different phone numbers, one for the girls and one for themselves, in their home. However, they did not maintain a separate phone line for the Bertha Jenkins Bookkeeping and Tax Service or keep a log or any other record of business calls. Petitioners concede that *346 they are not entitled to deduct $ 112.50 of the $ 150 of the Schedule C telephone expense disallowed by respondent in the statutory notice of deficiency for the taxable year 1979. Petitioners, however, maintain that they are entitled to deduct the $ 37.50 balance as the telephone expenses for the business use of the phone. There is no evidence as to the business usage of the telephone or any evidence that the purported business usage increased petitioners' basic charge for local telephone service. Petitioners deducted a dues and publications expense for each of the years in issue. Petitioners had never taken a deduction for dues and publications prior to the years in issue. Part of the deduction for dues and publications claimed on the Schedule C for the Bertha Jenkins Bookkeeping and Tax Service for the taxable year 1979 represented a hair dressing expenditure for Beverly, expenses for trash collection, and Mr. Jenkins' labor union membership dues which were withheld by payroll deduction from his Government paycheck. Petitioners also included as a dues and publications expense for each of the years in issue a portion of the cost for Ebony Magazine and the Cincinnati Enquirer, *347 a local general circulation newspaper, which both Mr. and Mrs. Jenkins read for general information and recreation. Petitioners also deducted advertising and travel and entertainment expenses. Petitioners did not present any evidence to substantiate either the fact or the amount of such expenditures. Petitioners did not maintain any type of log or other record for travel and entertainment expenses to specify where or when the cost was incurred, the amount of the cost incurred, the person entertained, or the business purpose of the travel or entertainment expenditure. Petitioners deducted business gifts on their Schedule C in the taxable years 1979, 1980, and 1981. Petitioners did not present any documents or any other evidence to show what was given, the business purpose, the cost, the date, or the amount of the gift, or the person to whom the gift was given. In 1982 petitioners also deducted a Form 2016 employee business expense in the amount of $ 28.30. This deduction was taken in connection with Mr. Jenkins' use of his automobile for one or two months in 1982 in the course of his employment with the Internal Revenue Service. There is no probative, competent evidence *348 in the record to establish the actual employee business expense incurred by Mr. Jenkins during the taxable year 1982. He computed his employee business expense deduction by adding up his depreciation, his repairs, and his estimates of other expenses for the year and then multiplying this total by the percent of time he estimated that he actually used his automobile in his work. There is no receipts or other documentary evidence in the record to show the actual expenses that he incurred while using his automobile in the course of his employment. In his computation of depreciation, Mr. Jenkins failed to take into account the salvage value of his car. [12] In the statutory notice of deficiency for the taxable year 1982, respondent disallowed $ 178 of the employee business expense claimed, thus allowing only $ 105.30. The record does not establish that Mr. Jenkins is entitled to any greater amount of employee business expense deduction. *349 In the two statutory notices of deficiency, one dated October 27, 1983 for the taxable years 1979 through 1981 and the other dated may 18, 1984 for the taxable year 1982, respondent disallowed the entire net loss claimed each year for the Bertha Jenkins Bookkeeping and Tax Service. The disallowance was based on the ground that the activity was not engaged in for profit under section 183. For the years 1979 through 1981, respondent also alternatively determined the amounts of Schedule C costs of goods sold and deductions allowable in the event the activity was held to be engaged in for profit so that any loss was allowable. For the year 1982 respondent determined that no amount was deductible even if the activity was engaged in for profit. These alternative determinations theoretically could result in increased deficiencies, but respondent has not sought any increased deficiencies and the Court will not further consider the matter. Respondent also determined that a portion of the substantiated interest expense was personal rather than business and so was allowed as an itemized Schedule A deduction in lieu of a Schedule C expense. Thus, respondent decreased petitioners' taxable *350 income by $ 329, $ 327.46, and $ 150.34 for the taxable years 1979, 1980, and 1981, respectively. Respondent also decreased petitioners' taxable income to reflect automatic increases in the sales tax deductions because of the increases in petitioners' adjusted gross income for 1979, 1980, and 1981. For 1982 respondent also disallowed $ 178 of the Form 2106 employee business expense. Respondent also adjusted petitioners' Schedule A interest deduction that year to the amount verified as paid, and disallowed $ 22. Respondent adjusted petitioners' education expense and increased petitioners' 1982 taxable income by $ 488. [13] Finally, respondent determined additions to tax under section 6653(a) or 6653(a)(1) for each year and also under section 6653(a)(2) for 1981 and 1982. ULTIMATE FINDINGS OF FACT 1. If the Bertha Jenkins Bookkeeping and Tax Service was in operation during the years before the Court, any such activity was not engaged in for profit during those years. 2. Petitioners have not established that their daughters, Karen and Beverly Jenkins, actually rendered *351 any services to the bookkeeping and tax service or that any amounts purportedly paid to or for their benefit constituted reasonable compensation for services actually rendered. 3. Many of the items deducted as costs of goods sold or business expenses of the Bertha Jenkins Bookkeeping and Tax Service were nondeductible personal, living or family expenses. 4. The method utilized by petitioner Herbert Jenkins in computing his wife's automobile expenses was without any factual support and was unreasonable. 5. Petitioners failed to properly document or substantiate the alleged business expenses deducted each year. 6. Petitioners underpaid their taxes in each of the years before the Court and those underpayments were due to petitioners' negligence and intentional disregard of rules and regulations. OPINION The first issue for decision is whether petitioner Bertha Jenkins (Mrs. Jenkins) engaged in the bookkeeping and tax service activity for profit during the taxable years 1979, 1980, 1981, and 1982. Section 162 allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business only if the activity is *352 engaged in for a profit. Respondent asserts, however, that Mrs. Jenkins' bookkeeping and tax service was an activity not engaged in for profit within the meaning of section 183, with the deductions attributable to that activity limited accordingly. An activity not engaged in for profit under section 183 is the other side of the coin of a trade or business under section 162 or an activity for production of income under section 212. Section 183(c) defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." If an activity is not engaged in for profit, section 183(b) allows only those deductions that are not dependent upon a profit motive, including interest and taxes, and those deductions that would otherwise be permitted if the activity was engaged in for profit, but only to the extent that the gross income derived from the activity exceeds the deductions that are not dependent upon a profit motive. The test of whether a taxpayer is engaged in an activity for profit turns on whether the taxpayer has an actual and honest objective *353 of making a profit. Dreicer v. Commissioner,665 F.2d 1292, 1299 (D.C. Cir. 1981), revg. and remanding a Memorandum Opinion of this Court; Beck v. Commissioner,85 T.C. 557, 569 (1985); Dreicer v. Commissioner,78 T.C. 642, 644 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983). A reasonable expectation of profit is not required as long as the taxpayer has an actual and honest objective of making a profit. Sec. 1.183-2(a), Income Tax Regs.; Dreicer v. Commissioner, supra,78 T.C. at 644-645; Golanty v. Commissioner,72 T.C. 411, 425-426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); Allen v. Commissioner,72 T.C. 28, 33 (1979); Bessenyey v. Commissioner,45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967), cert. denied 389 U.S. 931 (1967). Whether the taxpayer had the requisite profit motive is question of fact to be determined on the basis of the entire record. Engdahl v. Commissioner,72 T.C. 659, 666 (1979); Dunn v. Commissioner,70 T.C. 715, 720 (1978), *354 affd. 615 F.2d 578 (2d Cir. 1980). The taxpayer's motive as to his or her profit objective must be determined by a careful analysis of all the surrounding objective facts, with greater weight given to such objective facts than to the taxpayer's mere statement of intent. Sec. 1.183-2(a) and (b), Income Tax Regs.; Churchman v. Commissioner,68 T.C. 696, 701 (1977). Sections 1.183-2(a) and (b), Income Tax Regulations, set forth the relevant factors, derived from case law, that are to be considered in determining whether or not an activity is engaged in for profit. [14]Jasionowski v. Commissioner,66 T.C. 312, 321 (1976); Benz v. Commissioner,63 T.C. 375, 383 (1974). The regulations further provide that no one factor is conclusive and that we may not reach our decision herein by merely counting the factors that support each position. Sec. 1.183-2(b), Income Tax Regs. The taxpayer has the burden of proving the requisite profit objective. Rule 142(a); Golanty v. Commissioner, supra,72 T.C. at 426; Allen v. Commissioner, supra,72 T.C. at 34. *355 A record of substantial losses over many years and the unlikelihood of achieving a profitable operation are also important factors bearing on the taxpayer's true intention. Sec. 1.183-2(b)(6), Income Tax Regs.; Golanty v. Commissioner, supra,72 T.C. at 426; Bessenyey v. Commissioner, supra,45 T.C. at 274, affd. 379 F.2d 252 (2d Cir. 1967). A taxpayer may demonstrate a profit motive despite a record of substantial losses, in certain situations, including the struggling artist who must first achieve public acclaim before her work will command a price sufficient to provide her with a profit, Churchman v. Commissioner, supra,68 T.C. at 701-702, and the taxpayer who is just starting up a new business. Engdahl v. Commissioner,72 T.C. 659, 669 (1979). Although the present case does not deal with the type of activity involving personal pleasure or recreation that is often associated with section 183 questions, section 183 is not limited to so-called hobby losses. The profit-objective analysis of section 183 applies to tax shelter investments, Beck v. Commissioner, supra, and to putative *356 trades or businesses, Elliott v. Commissioner, 90 T.C.   (filed May 11, 1988) [Amway distributorship held to be an activity not engaged in for profit]. Based upon all of the facts and circumstances of this case, we conclude that Mrs. Jenkins did not engage in her bookkeeping and tax service activity with an actual and honest objective of making a profit during the years at issue. In determining whether Mrs. Jenkins had an actual and honest objective of making a profit, we first consider whether she conducted her bookkeeping and tax service in a businesslike manner as set forth in section 1.183-2(b)(1), Income Tax Regulations. In this instance we are confronted with a bookkeeper who maintained no business books or records, no payroll records, no ledgers, no accounts receivable, and no accounts payable. Her alleged books and records consist of cashregister receipts, charge account slips, and canceled checks, most of which do not reflect the nature of the purchase and many of which represent personal or family purchases rather than business expenditures. In a field that particularly lends itself to record keeping, petitioners presented no evidence that Mrs. Jenkins had *357 any clients or sent out any bills to any clients during the years in issue. In addition, she did not maintain a separate checking account for a business, but instead maintained a personal account in her own name, "Bertha Jenkins," to cover any checks that she might write. Moreover, the canceled checks in evidence, both those written on her account and those written on the spouses' joint personal account, are mostly made out to cash or are otherwise uninformative as to the nature of the alleged business expense. All of these factors indicate a failure to conduct the activity in a businesslike manner, which in turn indicates the lack of a functioning business. A further sign that Mrs. Jenkins did not conduct the activity in a businesslike manner was the fact that the deductions claimed during the years in issue did not differ in any appreciable amounts, notwithstanding the purported loss of clients and revenue for the taxable years 1979, 1980, 1981, and 1982, from the amounts they deducted in the years before the purported loss of clients and revenue. See n.4, supra. In addition, although the business had been losing money since 1975, the amount of deductions for wages, office *358 supplies, dues and publications, and costs of goods sold generally increased in relation to the gross income reported during the years in question. For the taxable years 1979, 1980, and 1981, the wages purportedly paid to the daughters, principally Beverly, amounted to 64 percent, 100 percent, and 111 percent, respectively, of the gross income reported for the activity. Moreover, Mrs. Jenkins admitted that in setting these wage levels, she never tried to determine how much she could pay her daughters and still achieve a profit. The deductions claimed for costs of goods sold and office supplies in 1979, 1980, and 1981 totaled approximately 52 percent, 65 percent, and 76 percent, respectively, of the gross income reported those years. Mr. Jenkins argued at trial that it was not a reasonable business practice to charge clients for supplies, but nevertheless the amounts expended for supplies relative to the gross income must be considered in any business carried on for profit. These increasing deductions, despite the purported loss of clients and revenue, demonstrate Mrs. Jenkins' failure to conduct the activity in a businesslike manner. When Mrs. Jenkins took over the bookkeeping *359 and tax service from her husband in 1970, she had little prior experience with bookkeeping and Federal taxation, and no experience in running a business. While prior experience in an area of business is not necessary to have an actual and honest profit objective, preparation for an activity by studying accepted business and economic practices or consultation with those who are experts may indicate that the taxpayer had a profit objective. Sec.1.183-2(b)(2), Income Tax Regs.; Harvey v. Commissioner,T.C. Memo. 1988-13. Mrs. Jenkins was not an accountant and had no formal education in either Federal taxation or accounting aside from one course in Federal taxation, one course in the principles of accounting, and one course in nonprofit organizations. Petitioners argue that Mrs. Jenkins worked for her husband for two years prior to taking over the business in 1970 and gained experience by working for her husband's bookkeeping and tax service. However, Mr. Jenkins did not complete his own training as an accountant until 1976 or 1977. More importantly, petitioners did not specify what services Mrs. Jenkins performed for her husband's bookkeeping and tax business and *360 what expertise she gained from the work. In addition, Mr. Jenkins did not include any wage payments on his Schedule C's for 1968 and 1969, and no mention was made of Mrs. Jenkins on the returns to indicate that she even worked for him. Another indication of Mrs. Jenkins' lack of an actual and honest profit objective during the years before the Court is the fact that by 1979 Mrs. Jenkins devoted little time, if any, to the business. She worked on a part-time job outside the home in 1979. The record is singularly devoid of any evidence to establish what business activities Mrs. Jenkins actually engaged in for the alleged bookkeeping and tax service during any of the years in issue. Beginning in 1980 Mrs. Jenkins worked full time for PREP, Inc. and continued working there until 1982, when she began working full time for a law firm. Although Mrs. Jenkins allegedly turned over more and more responsibility to the 16 or 17-year-old Beverly, Beverly herself had a part-time job in 1981 and 1982 in addition to attending school. Although petitioners testified that by 1981 Mrs. Jenkins spent little time trying to secure new clients, we are satisfied that this was in fact the case well *361 before 1979. Another indication that Mrs. Jenkins did not have an actual and honest profit objective was the fact that from 1975 through the years in issue, Mrs. Jenkins did not report any gains on her Schedule C, but instead reported sizable losses each year. Although the business made a small profit of a few hundred dollars in the early seventies, by 1975 and thereafter the losses continued to mount up every year with $ 35,594.21 in total losses between 1975 and 1982 as compared to $ 813.47 in net profit between 1970 and 1974 when the business was making a small profit. While the profit to loss ratio alone is not conclusive as to whether Mrs. Jenkins had an actual and honest profit objective, her purported continued operation of the bookkeeping and tax service, despite these growing losses from 1975 on, is a further indication of her lack of an actual and honest objective of making a profit. We note that from 1971 through 1977 there were dramatic increases in gross income reported but equally large or substantially lager increases in costs of goods sold and business expenses claimed. See n.4, supra. This obvious failure to control expenses and her practice of allegedly *362 paying ever increasing amounts as "wages" to her young daughters are further factors indicating that Mrs. Jenkins did not have an actual and honest objective of making a profit. Petitioners argue that the purported loss in revenue in the middle and late seventies was due to a loss of clients because of the poor economic conditions facing minority business in that period. Since in the early seventies most of Mrs. Jenkins' clients were minority businesses, petitioners argue that their loss of clients was due to the poor economic conditions that were beyond Mrs. Jenkins' control. Section 1.183-2(b)(6), Income Tax Regulations, provides that if losses are sustained because of unforeseen or fortuitous circumstances that are beyond the control of the taxpayer, such losses are not an indication that the activity is not engaged in for profit. Sec. 1.183-2(b)(6), Income Tax Regs. Although the majority of Mrs. Jenkins' clients at least in the mid-1970's were minority businesses, petitioners offered no evidence to show who her alleged clients were during the period 1979 through 1982 or to demonstrate that the economy for minority businesses was poor in the late seventies or that these poor *363 economic conditions contributed to Mrs. Jenkins' purported loss of clients. In fact, some of the clients that left the Bertha Jenkins Bookkeeping and Tax Service remained in business and secured other bookkeepers, including certified public accountants. The contention that Mrs. Jenkins lost clients and revenue in the late seventies, which is not shown by the gross income figures reported, would, even if established, not be the determinative factor in deciding whether she had a profit objective. Instead, we would also base our decision that she did not have a profit objective on the way she ran her bookkeeping and tax service with regard to any clients she did have. She maintained no records of the type one would expect to find in a bona fide bookkeeping and tax service. In fact, petitioners did not produce documentary evidence of any kind dated after 1974 to indicate that the bookkeeping and tax service still existed. All of the contracts with clients and invoices to clients were dated in 1974 or earlier, and we simply are not persuaded that a business was even being conducted during the years before the Court. Petitioners deducted increasingly larger amounts, primarily *364 representing wages allegedly paid to their daughters, costs of goods, and office supplies, despite the purported loss of revenue from year to year in this seemingly mythical bookkeeping and tax service. The record as a whole indicates that petitioners employed the bookkeeping and tax service as a useful vehicle to claim various personal, living or family expenses as alleged business deductions. Although Mrs. Jenkins may have originally had a profit objective when she started the Bertha Jenkins Bookkeeping and Tax Service in 1970, we find that this was no longer the case during the years in issue. By 1979 the Bertha Jenkins Bookkeeping and Tax Service was merely a convenient device by which petitioners could try to deduct otherwise nondeductible personal expenses and obligations. Even though we find that Mrs. Jenkins did not have an actual and honest profit objective during the years before the Court, petitioners may still take those deductions that would be permitted if the activity was engaged in for profit, but only up to the extent of the gross income reported from the activity under section 183(b)(2). However, the taxpayer must substantiate the fact and amount of each claimed *365 business expenditure. The taxpayer bears the burden of proof in substantiating claimed deductions. Deptuy v. duPont,308 U.S. 488, 493 (1940); Rockwell v. Commissioner,512 F.2d 882, 886 (9th Cir. 1975), cert. denied 423 U.S. 1015 (1975). During the years in issue petitioners deducted amounts they claimed were wages paid to their daughters, Karen and Beverly. Since petitioners claimed payment of wages to Karen only in the amount of $ 125 in 1979, our discussion will be limited to Beverly except for certain substantiation matters. Section 162(a)(1) allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for services actually rendered. Compensation is deductible under section 162(a)(1) only if it is (1) reasonable in amount, (2) based on services actually rendered, and (3) paid or incurred. Eller v. Commissioner,77 T.C. 934, 962 (1981). The deduction for compensation is allowable, even though the employer is the parent and the employee is a child. Eller v. Commissioner, supra; *366 Mitchell v. Commissioner,27 B.T.A. 101, 104 (1932). When a familial relationship is involved, this Court carefully scrutinizes the transaction to determine whether a bona fide employer-employee relationship exists and whether the payments are made because of that relationship, rather than the familial relationship. [15] However payments to a child must be made pursuant to and because of a bona fide employer-employee relationship for services actually performed for the business, rather than for performing household chares or services that are more closely related to parental training and discipline. Denman v. Commissioner,48 T.C. 439, 450 (1967). If the Court finds that only some of the payments were for services actually performed, the Court may determine on the basis of the evidence as a whole what would be a reasonable salary for the service actually rendered. [16]
In this case Beverly was a minor and petitioners' dependent during the time that she allegedly worked for the Bertha Jenkins Bookkeeping and Tax *367 Service. Although Mrs. Jenkins provided Beverly with W-2 forms for the years in question, and Beverly included the amounts designated as wages on her 1981 and 1982 Federal income tax returns, we conclude that no bona fide employer-employee relationship existed. Beverly had to file returns to claim refunds of her taxes withheld by other outside employers in 1981 and 1982. In 1981 Beverly was not required to pay any tax at all, so the fact that she reported wage payments from the bookkeeping and tax service as salary had no tax consequence to her. In 1982 Beverly was required to pay only $ 20 in tax on income reported that year, so the fact that Beverly claimed wage payments from the bookkeeping and tax service as salary payments in 1982 again had little tax consequence to her. We conclude that petitioners did not meet the three requirements in section 162(a)(1) or treat the arrangement with their minor child as a bona fide employer-employee relationship. As to the requirement under section 162(a)(1) that payments for services be reasonable in amount, this determination is difficult if not impossible to make since petitioners could not establish when or how many hours Beverly *368 worked in any given year. There was no employment agreement, written or oral, establishing the terms of the purported employment. More importantly, there was no contemporaneous record of the number of hours, if any, that Beverly worked. Both Mrs. Jenkins and Beverly testified that Beverly worked eleven hours per week, four hours on Saturday, four hours on Sunday, and three hours during the week, but the Court simply did not believe their testimony. See n.5, supra. Mrs. Jenkins allegedly paid Beverly based on an hourly wage that was higher than the Department of Labor wage guidelines for the minimum wage. We did not find Mrs. Jenkins' testimony with regard to the eleven-hour work week credible since she also testified that Beverly had no set hours and that she never supervised Beverly nor recorded any hours. In addition, even if Beverly performed the work as petitioners alleged, and we think she did not, we would find that her pay was excessive. Beverly was 14 years old in 1979 [17] when she allegedly began doing bookkeeping work for her mother. Beverly had no special skills or knowledge in bookkeeping or Federal taxation. She took one high school accounting course in 1982, *369 and at trial did not know what a Schedule C was. Thus, paying her at a rate higher than the minimum wage as set forth in the Department of Labor wage guidelines was excessive. Petitioners did not carry their burden of proof to establish that the wages allegedly paid to Beverly were reasonable. The second requirement is that the payments be based on services actually rendered. Petitioners did not specify what work, if any, Karen did for the bookkeeping service to earn the $ 125 in 1979. Petitioners' testimony as to what Beverly did for the bookkeeping service was vague, generalized, and wholly unpersuasive. At best Beverly may have occasionally totaled up checks and invoices and done some typing. Beverly's own testimony as to what she did was no more informative, and she seemed woefully unaware of what her mother did in the bookkeeping and tax service. Mrs. Jenkins suggested at the trial that her then 16 or 17-year-old daughter worked for the bookkeeping and tax service on Saturdays while she herself did housework. The Court found this testimony inherently incredible. *370 Petitioners offered no further evidence to corroborate their self-serving testimony that Beverly performed work for the bookkeeping and tax service. Thus, we find that petitioners did not meet the second requirement of showing that the payments were for services actually rendered. The third requirement is that the wages actually be paid. The only documents petitioners offered as substantiation for the wage payments to Beverly and Karen were checks payable to cash or to third parties that were written on both Mrs. Jenkins' personal account and on her joint checking account with her husband, and receipts from various department stores where Beverly, Mrs. Jenkins, and Mr. Jenkins did their personal shopping. Petitioners presented, among other things, a check with the notation "Bev-Birthday," a 1980 receipt marked "Karen Jenkins," 1980 checks payable to Karen Jenkins, a receipt for a man's coat, and a receipt for men's sportswear to substantiate wages allegedly paid to Beverly in 1980. These checks and these receipts indicate that petitioners were attempting, at least in some instances, to deduct as wages some expenditures made for personal reasons, separate and distinct from *371 any bona fide business relationship. See sec. 262. With respect to the checks made payable to third parties, this Court has declined to treat such payments as wage in the complete absence of corroborating evidence. [18] Here too we conclude that these checks do not establish that the wages were actually paid. We note that petitioners presented checks to dry cleaners totaling $ 321.65 as alleged wage payments to Beverly in 1981. From the total amount and the regularity of these checks, it would appear that these were family dry cleaning expenses rather than wages to a 16-year-old girl. We also decline to treat charges in department stores where petitioners do their personal shopping as wages in the complete absence of corroborating evidence. Thus, petitioners did not meet any part of the requirements under section 162(a)(1) and so may not deduct the wage allegedly paid to Karen and Beverly. In addition, petitioners attempted to deduct as wages amounts that were expended to pay for Beverly's support and maintenance, including her school lunch money and clothing. A parent cannot deduct payments for *372 the support and maintenance of a minor child. Sec. 262. These expenses constitute personal expenses under section 262 that are not deductible. Thus, petitioners cannot deduct any payments they made for Beverly's support and maintenance, which include the amounts expended for her food and clothing. Petitioners argue that, despite this lack of substantiation and corroborating evidence, this Court should nevertheless make a determination under the Cohan rule. Under Cohan v. Commissioner,39 F.2d 540, 543-544 (2d Cir. 1930), this Court may approximate expenses incurred if it is convinced that an amount was actually spent for a deductible purpose. Such an approximation must bear heavily against the taxpayer whose inexactitude is of his own making. 39 F.2d at 544. Based on the record before us, we find application of the Cohan rule inappropriate here since we find that Beverly did not work for the business and, even if she did perform some minor tasks, the record simply does not afford any basis on which an estimate of Beverly's hours of work or reasonable compensation for any such work can be made. We refuse to guess in the absence of a single *373 reliable guide and will not indulge in sheer "unguided largesse." See Williams v. United States,245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner,85 T.C. 731, 742-743 (1985). During the years in issue petitioners also attempted to deduct depreciation, gas and oil, and repair expenses for Mrs. Jenkins' automobile. Under section 162, automobile expenses are deductible if the automobile is used in furtherance of the taxpayer's business rather than for personal use. Boyd Construction Co. v. United States,339 F.2d 620, 623 (Ct. Cl. 1964). If the evidence shows that the automobile in question was used for both personal and company business, but no record was maintained as to the amount of mileage for each purpose and there is not other satisfactory evidence of the amount, respondent's determination must stand. Boyd Construction Co. v. United States, supra.The taxpayer may prove the amount of his automobile deductions by either the standard mileage rate method provided in the regulations or by establishing the actual cost of operating his automobile including such items as depreciation, insurance, oil, gas, *374 and repairs. Kasey v. Commissioner,54 T.C. 1642, 1650 (1970), affd. 457 F.2d 369 (9th Cir. 1972), cert. denied 409 U.S. 869 (1972); see Rev. Proc. 82-61, 1982-2 C.B. 849. Unlike the detailed substantiation requirements under the regulations to section 274 for deductions taken for expenses while traveling away from home, no specific requirements exist for the substantiation of business deductions taken for business use of an automobile for local transportation. See sec. 1.274-5, Income Tax Regs. What is required, however, is evidence of some type to establish the amount of the deductions. Cobb v. Commissioner,77 T.C. 1096, 1101 (1981), affd. without published opinion 680 F.2d 1388 (5th Cir. 1982). One taxpayer was able to substantiate his automobile deductions by keeping a record of addresses of the various clients he visited and the dates he made these visits, keeping a record of business mileage that he drove during one month of the year in issue, keeping a record of his business driving for the following year, and testifying that his driving for business purposes during the recorded year *375 was not more than the year in issue, and keeping a record of the total miles driven for the year in issue. [19] Another taxpayer was able to substantiate his deductions through his testimony with regard to his business mileage per week, a stipulated statement from the taxpayer's supervisor specifying the size of the taxpayer's sales area and the necessity for the taxpayer to cover this extensive area by actually going to his customers, gasoline purchases that the taxpayer substantiated, and the taxpayer's record of the total miles driven in his automobile for the year in issue. [20]
In this case petitioners claimed they used Mrs. Jenkins' actual expenses to determine deductions for the business use of her automobile. In fact petitioners used neither actual expenses nor the standard mileage rate method. In computing their deductions petitioners claimed five different percentages of business use for Mrs. Jenkins' automobile in 1979, three different percentages in 1980, and two different percentages in 1981. Respondent determined that Mrs. Jenkins' *376 automobile had no more than a 47 percent business use in 1979, a 40 percent business use in 1980 and 1981, and no business use in 1982. In addition to petitioners' mishmash of percentage rates, the other components of petitioners' computations of automobile expenses were a series of other estimates, each wholly lacking in any factual basis. Beyond Mr. Jenkins' own testimony that the deductions claimed were valid and his confusing explanation as to how he estimated the various components of the deductions, petitioners offered no corroborating evidence to indicate that Mrs. Jenkins used her automobile for business and, if so, how much she used her automobile for business reasons during the years in issue. Petitioners' cumulation of estimates heaped upon estimates and various unexplained percentage rates applied to those various estimates constitute a wholly unreasonable and arbitrary method of determining any deductions for business use of Mrs. Jenkins' car. Although this Court does not deny the validity of Mr. Jenkins' theory of determining business mileage by subtracting personal miles from total mileage for the year, petitioners have offered no evidence to establish the amount *377 of any such personal mileage. Mr. Jenkins simply estimated Mrs. Jenkins' mileage to work and weekend trips. In 1980 and 1981 she worked full time at another job and used her automobile to drive to this job but still took deductions for the business use of her car in the amounts of 75 percent for insurance and repairs and 62 percent for depreciation. In addition, petitioners included a Genie garage door opener used by both petitioners, in their estimates for automobile depreciation deductions. Due to the fact that petitioners presented no evidence to corroborate their testimony with regard to the business use of the car, we accept respondent's determination that Mrs. Jenkins' automobile had no more than a 47 percent business use in 1979, a 40 percent business use in 1980 and 1981, and no business use in 1982. In the parties' Rule 155 computations, those percentages may be applied to the stipulated total mileage figure for each year and the standard mileage rate for the particular year applied thereto. During the years in issue petitioners took a deduction for an office in the home. Section 280A establishes the general rule that no deduction is allowed with respect to business *378 use of a residence. Under section 280A(c), however, a taxpayer may deduct expenses with regard to the use of a portion of his residence if that portion of the residence is exclusively used on a regular basis as the principal place of business for any trade or business of the taxpayer, or as a place of business that is used by clients or customers in meeting or dealing with the taxpayer in the normal course of his trade or business. Although petitioners deducted depreciation expenses with regard to an office in the home, petitioners did not establish that the home office was either used exclusively for a trade or business or used by clients or customers in dealing with Mrs. Jenkins in the normal course of business. Petitioners argue that since Mrs. Jenkins maintained no other office from which she conducted her bookkeeping and tax service, she should be allowed the expenses for this office in her home. However, the test under 280A(c) is not whether the taxpayer's sole place of business is that home office, but whether that home office is used exclusively for business and has no personal use. [21] Beverly's testimony with regard to her personal use of the office negated the "exclusive *379 use" requirement of section 280A(c)(1)(A). Beverly testified that she used the room claimed as a home office to study in when nobody was using the room. The fact that petitioners may not have fully depreciated the home office due to Beverly's personal use of the office does not detract from or change the fact that the office was not exclusively used for business. Likewise, Mrs. Jenkins' testimony negated the "used by * * * clients" alternative of section 280A(c)(1)(B). She testified that "only maybe one [client] during that period [the years in issue] that would have come to my house. Otherwise, I went to them, * * *." Thus, the home office was not used by clients in the regular course of any business. Accordingly, *380 petitioners may not deduct expenses for the use of a home office. On their Schedule C for each of the taxable years 1979, 1980, and 1981 petitioners deducted amounts as costs of goods sold and office supplies. Respondent disallowed a portion of the deductions claimed based on petitioners' insufficient records to substantiate the expenditures. Section 162(a) provides for the deduction of all ordinary and necessary expenses paid or incurred in carrying on any trade or business, including office supplies and costs of goods sold. Sec. 1.162-1(a), Income Tax Regs. The taxpayer has the burden of proof to establish that the deduction is ordinary and necessary and the amount of the expenses. Burnet v. Houston,283 U.S. 223, 227 (1931). In meeting this burden the taxpayer is responsible for maintaining records sufficient to support the claimed deductions. [22]
Petitioners claim that respondent is applying the substantiation requirements of section 274 to this section 162 deduction. [23] That is not the case. The detailed substantiation requirements specified in the regulations to section 274 are for *381 specific items and are in addition to the normal substantiation of ordinary and necessary business expense under section 162. Here we are addressing only the normal substantiation of ordinary and necessary business expenses under section 162. Petitioners' method for substantiating the majority of their business expenditures was not sufficient to meet their burden of proof under section 162(a). Petitioners attempted to substantiate the majority of their expenditures with cash register and charge receipts that contained no information as to what was purchased, and personal checks written on both Mrs. Jenkins' personal checking account and on her joint checking account with Mr. Jenkins, again with no information as to what was purchased. The charge and cash register receipts were from various department and discount stores where Mr. Jenkins, Mrs. Jenkins, and Beverly did their personal shopping. The checks on Mrs. Jenkins' checking account and on the joint checking *382 account were also made payable to cash or to these same department and discount stores. A taxpayer of course can deduct office supplies purchased at stores where he does his personal shopping, but only if he can otherwise establish that these purchases are in fact business expenditures. Respondent has conceded that petitioners may take a deduction for those cash register and charge receipts that specify the supplies that were actually purchased. We will accept respondent's concession with respect to those receipts that indicated what was purchased, although the Court finds many of the purchases, as detailed in the findings, troubling. We find that Mrs. Jenkins' method of marking the remaining receipts with an "OS" does not satisfy petitioners' burden of substantiating their deductions for office supplies under section 162(a). Petitioners argue that under the Cohan rule this Court can make an approximation of expenses if the Court finds that the taxpayer actually incurred some deductible expenses. Cohan v. Commissioner, supra. Based on the record before us, we find application of the Cohan rule inappropriate here where the record simply does not afford *383 any basis on which an estimate can be made, beyond those amounts conceded by respondent. As we stated with respect to the purported salary paid to Beverly, we refuse to guess in the absence of a single reliable guide, and will not indulge in "unguided largesse." See Williams v. United States, supra;Vanicek v. Commissioner, supra.
On Schedule C of their 1979 Federal income tax return, petitioners claimed a deduction for a telephone expense. Although petitioners concede that they cannot deduct $ 112.50 of the $ 150 of the telephone expense, they maintain that they are entitled to deduct $ 37.50 in telephone expenditures as a business expense. We have held that the cost of maintaining a telephone is deductible as a business expense if the cost incurred thereby is directly related to the taxpayer's earning of income, Roth v. Commissioner,17 T.C. 1450 (1952), and the phone is used for business calls. Moline Dispatch Publishing Co. v. Commissioner,11 B.T.A. 934, 943 (1928). If both substantial business and personal motives exist with respect to the maintenance of the telephone, it is necessary to make an allocation *384 of the expenditures incurred thereby between the business and personal uses. See International Artists, Ltd. v. Commissioner,55 T.C. 94, 105 (1970). However, if the telephone's primary purpose is personal, rather than business, no deduction for telephone shall be allowed. See International Artists, Ltd. v. Commissioner, supra,55 T.C. at 104. The only evidence petitioners presented with regard to the business use of the telephone was Mrs. Jenkins' testimony that she used the phone to contact clients. While petitioners maintained five telephones in their home, they kept no record of their business use of these phones. There were two telephone numbers, one for the parents and one for the daughters, but there was no particular phone or phone number for the bookkeeping and tax service. Mrs. Jenkins did not indicate how often she used the phone or how many clients she called on the phone. There is no suggestion that any business usage in any way increased the expense of having the telephone for personal usage. Due to this lack of any substantiation as to business use or business expense, we agree with respondent's disallowance of the entire telephone *385 expense deduction. Petitioners also attempted to deduct $ 51 in 1980 and $ 203.33 in 1981 for dues and publications. Petitioners conceded that they could not deduct $ 35.65 in 1980 for dues and publications. To deduct business expenses for dues and publications under section 162, the taxpayer must show that the expenses were business rather than personal. Ives v. Commissioner,5 B.T.A. 934, 937 (1926). Petitioners did not establish that the deductions they took for the Cincinnati Enquirer and Ebony magazine, which both spouses read, were business rather than personal. Therefore petitioners may not deduct these expenses. Petitioners attempted to deduct expenses for advertising, gifts, and travel and entertainment on their Schedule C. Since petitioners bear the burden of proof and they did not present any evidence to establish the fact or amount of any such business expenses, respondent's disallowance of these items is sustained. The next issue is whether Mr. Jenkins may deduct $ 283.30 as an employee business expense in connection with his employment with the Internal Revenue Service in 1982. Petitioners claimed this deduction for Mr. Jenkins' use of *386 his automobile during 1982 to conduct audits as an internal revenue agent. Respondent disallowed $ 178 of the amount petitioners claimed. A taxpayer may deduct automobile expenses under section 162 if the taxpayer establishes that the expenses were incurred for the business use of his car. Boyd Construction Co. v. United States,339 F.2d 620, 623 (Ct. Cl. 1964). Petitioners, however, failed to establish that any amount in excess of that allowed by respondent was incurred as an ordinary and necessary expense in connection with Mr. Jenkins' employment during the 1982 taxable year. Furthermore, Mr. Jenkin admitted at trial that a portion of the employee business expenses claimed represents depreciation that he improperly calculated without taking into consideration the salvage value of his automobile. We find that petitioners have not met their burden of proof on this issue and so may only deduct the $ 105.30 that respondent allowed in the notice of deficiency. The final issue in this case is whether additions to tax should be assessed against petitioners under section 6653(a) for negligence or intentional disregard of rules and regulations. Section 6643(a) (for *387 1979 and 1980) and section 6653(a)(1) (for 1981 and 1982) provide for an addition to tax if any part of any underpayment is due to negligence or intentional disregard of rules and regulations. The taxpayer has the burden of disproving negligence or an intentional disregard of rules and regulations under section 6653(a) by a preponderance of the evidence since the Commissioner's determination of negligence is presumed correct. Marcello v. Commissioner,380 F.2d 499, 507 (5th Cir. 1967), affg. a Memorandum Opinion of this Court; Estate of Mason v. Commissioner,64 T.C. 651, 663 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Enoch v. Commissioner,57 T.C. 781, 802-803 (1972). Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). This Court has held that the failure to maintain accurate records of cash transactions is a basis for assessing the negligence addition. Marcello v. Commissioner,380 F.2d 509, 511 (5th Cir. 1967), affg. a Memorandum Opinion of *388 this Court. In this case we found that petitioners claimed business expense deductions with regard to an activity not engaged in for profit. Petitioners have failed to establish that a Schedule C business was still in operation during the years before the Court. In a bookkeeping and tax service where documentation would be expected, petitioners offered no documents of any kind to show that the Bertha Jenkins Bookkeeping and Tax Service had any clients or carried on any business during these years, much less had the numerous deductions that petitioners claimed they had in the operation of the business. Petitioners attempted to deduct expenses for an alleged bookkeeping business that failed to keep any business books or records of its purported business. We find that this behavior, at the very least, constitutes negligence or intentional disregard of rules and regulations. We also find petitioners' attempt to deduct unsubstantiated expenses was negligent. Petitioners' did not maintain any financial books or records to substantiate the multitude of expenditures claimed on their Schedule C's. For the taxable years 1979, 1980, and 1981, petitioners submitted loose cash register *389 receipts, canceled checks, and charge slips, which reflect general expenditures that could have been, and in many instances clearly were, made for personal or family reasons, not for business reasons, to substantiate their deductions for cost of goods sold, office supplies, and wages. Petitioners did not submit any evidence to substantiate most of their office supplies. They submitted no evidence to substantiate automobile expenditures, beyond their testimony as to how they guessed at the various estimates of amounts and percentages for their automobile deductions. In addition, petitioners attempted to take a deduction for items that they later admitted should not have been included, including a garage door opener and a depreciation deduction that did not include the salvage value of Mr. Jenkins' car. These mistakes were careless and thus constitute negligence on the part of petitioners. Also the record as a whole establishes that many of the deductions claimed on the Schedule C's were personal, living or family expenses which were clearly nondeductible. In determining whether a taxpayer is negligent or intentionally disregards rules and regulations, this Court also considers *390 the experience and knowledge of the individual taxpayer involved. In Cobb v. Commissioner,77 T.C. 1096, 1101-1102 (1981), affd. 680 F.2d 1388 (5th Cir. 1982), this Court held that the taxpayer, as an attorney, should have exercised greater care when attempting to take deductions for expenses for which he maintained no records. In this case these unsubstantiated deductions and clearly nondeductible personal expenses were taken by Mrs. Jenkins, who claimed to be a bookkeeper and tax preparer during the years in issue, and by Mr. Jenkins, who was both a certified public accountant and an internal revenue agent during the years in issue. In addition, during his years with the Service Mr. Jenkins had specific experience auditing sole proprietorships. Petitioners knew or should have known that they had to substantiate the deductions they claimed and had to establish both the amount and business, as opposed to personal, nature of the expenditures. Thus, petitioners underpaid their taxes each year and are liable for additions to tax under section 6653(a) for 1979 and 1980 and under section 6653(a)(1) for 1981 and 1982 due to negligence or an intentional *391 disregard of rules and regulations. Section 6653(a)(2) was added to the Code by section 722(b)(1) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, 342. This section provides that if any part of an underpayment of tax is due to negligence or intentional disregard of the rules and regulations, a tax, in addition to the five percent addition already provided by section 6653(a)(1), shall be added that is equal to 50 percent of the interest payable under section 6601 with respect to the portion of such underpayment that is attributable to negligence. On brief petitioners argue that any addition under section 6653(a)(2) would apply only to the year 1982. We disagree. The addition to tax under section 6653(a)(2) is imposed for the period beginning on the last day prescribed by law for payment of such underpayment. Section 6653(a)(2) is applicable to taxes "the last day prescribed for payment of which is after December 31, 1981." Pub. L. 97-34, 95 Stat. 172, 342-343 (1981). The last day prescribed for payment for petitioners' 1981 individual income tax was at the time the tax return was due. Sec. 6151(a). Individual income tax returns made on the basis of *392 the calendar year, as is the case here, shall be filed on or before the 15th day of April following the close of the calendar year. Sec. 6072(a). In petitioners' case their 1981 tax return was due on or before April 15, 1982. Petitioners' payments of their 1981 and 1982 taxes were both due after December 31, 1981, and so their underpayments those years are subject to section 6653(a)(2). Thus, petitioners are also liable for the addition to tax under section 6653(a)(2) in those years. In summary, we hold that the bookkeeping and tax service was not an activity engaged in for profit under section 183 during the years before the Court. Petitioners may only deduct those expenses we allowed above, up to the gross income reported on their Schedule C each year. Respondent's determinations of additions to tax for negligence or intentional disregard of rules and regulations are sustained for all years. To reflect the stipulations of the parties and the foregoing holdings, Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question, and all "Rule" references are to the Tax Court Rules of Practice and Procedure. ↩
2. Petitioners referred to the bookkeeping and tax service as "Jenkins Bookkeeping and Tax Service" at trial, their Schedule C's and stipulations referred to it as "Bertha Jenkins Bookkeeping Service," and Mrs. Jenkins' letterhead referred to it as "Bertha Jenkins Accounting & Tax Service." To avoid confusion, we shall refer to it as the "Bertha Jenkins Bookkeeping and Tax Service." ↩
3. While on direct examination, Mrs. Jenkins testified that she maintained a separate checking account for the business, on cross examination she admitted that the account was in her name and was also used to write her personal checks. This testimony was illustrative of Mrs. Jenkins' frequent lack of candor and misleading testimony. Moreover, of the many checks written on her account and claimed as business expenses, few appeared to be related to any business, as will be discussed below. ↩
*. There are numerous arithmetical errors on the Schedule C's ranging from a few cents to $ 600, so these total figures do not always comport with the individual figures on the Schedule C's. ↩
4. As shown in the table in the text above, Mrs. Jenkins reported Schedule C gross income of $ 809 in 1970 which increased up to the maximum amount of gross income of $ 8,612.31 in 1973. The gross income declined slightly to $ 8,086.02 in 1974 and thereafter dropped each year down to a low of $ 1,999 in 1980. More importantly, the amounts of deductions (including costs of goods sold) increased each year, always at least matching and in most years greatly exceeding the amount of gross income reported. In 1977, for example, gross income of $ 4,029.33 was reported, and cost of goods sold and deductions totaling $ 10,845.52 were claimed. Mrs. Jenkins' contentions at trial and on brief that in 1978 to 1979 she lost clients and then increased her expenditures, particularly her automobile expenses, to try to regain her lost clients or obtain new clients are not borne out by her Schedule C figures. ↩
*. Because of various computational errors on petitioners' Schedule C's, these figures differ slightly from the Totals shown on the preceding table. ** The category of car and truck expenses represents petitioners' categories of "gas and oil" and "car and truck expenses"; the category of "office supplies" represents petitioners' categories of "paper," "supplies," and "office supplies." ↩
5. At trial both Mrs. Jenkins and Beverly testified categorically that Beverly worked 11 hours per week: 4 hours on Saturday, 4 hours on Sunday, and 3 hours during the week. In view of her school work, outside jobs, and particularly the lack of any persuasive evidence as to what she allegedly did for the bookkeeping and tax service and when she did it, the Court did not believe the testimony of either woman. Beverly was particularly vague as to what she did, did not seem to have any idea what her mother did, and did not even know what a Schedule C is. Mrs. Jenkins' testimony suggested the inherently incredible scenario that on the weekends she was home doing housework while her 16 or 17-year-old daughter did the work for the bookkeeping and tax service. While the Court believes that Mrs. Jenkins did carry on a bookkeeping and tax service at an earlier time, particularly in the 1970 through 1974 period, the Court is not persuaded that any business was in fact carried on during the years 1979 through 1982. ↩
6. While Beverly testified she worked for Fashion Discovery, her W-2 and tax return show that she worked for Northern Hills Fashions. ↩
7. We note that the Form W-3 for 1981 shows wages of $ 2,500, with $ 2,300 (the amount deducted on petitioners' Schedule C and the amount reported by Beverly on her tax return) scribbled in on the side. ↩
8. The Court simply does not believe that dry cleaning bills in such an amount were solely for a 16-year-old girl rather than for her parents who both worked outside the home that year. ↩
9. Respondent determined that if Mrs. Jenkins is held to be engaged in the activity of bookkeeping and tax service for profit during the taxable year 1979, then her automobile had no more than a 47 percent business use during that year. Respondent based this percentage on the number of mile Mrs. Jenkins claims to have traveled to visit her regular clients twice each month and an estimate of 1,092 miles for her general business travel. ↩
10. Respondent determined that if Mrs. Jenkins is held to be engaged in the activity of bookkeeping and tax service for profit during the taxable year 1980, her automobile had no more than 40 percent business use that year. ↩
11. Respondent determined that if Mrs. Jenkins is held to be engaged in the activity of bookkeeping and tax service for profit during the taxable year 1981, the automobile had no more than a 40 percent business use, which is the same or higher than the percentages used by petitioners. ↩
12. He admits that was an error on his part. Also Mr. Jenkins was graduated from Xavier University in January of 1982, yet on his 1982 return he deducted Schedule A expenses for education that included an amount of $ 488 for 35 weeks of travel to Xavier University. He admits that this $ 488 deduction was also improper. ↩
13. Petitioners do not contest respondent's adjustments to the interest or educational expense items. ↩
14. These factors include: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer, and (9) whether elements of personal pleasure or recreation are involved. Sec. 1.183-2(b), Income Tax Regs.↩
15. Furmanski v. Commissioner,T.C. Memo. 1974-47↩. 16. Heath v. Commissioner,T.C. Memo. 1971-129↩. 17. She was only nine years old in 1974 when Mrs. Jenkins first began deducting wages allegedly paid to her. ↩
18. See Roundtree v. Commissioner,T.C. Memo. 1980-117↩. 19. Frankel v. Commissioner,T.C. Memo. 1968-168↩. 20. Martin v. Commissioner,T.C. Memo. 1968-127↩. 21. See Naggar v. Commissioner,T.C. Memo. 1983-559; Smith v. Commissioner,T.C. Memo. 1982-546. This Court in Naggar v. Commissioner, supra,↩ refused to allow the taxpayers to take a home office deduction despite the fact that the room in the apartment was the only place of business for the taxpayers, since the room became part of the family dwelling quarters at night and so was not used exclusively for business. 22. Risicato v. Commissioner,T.C. Memo. 1984-238↩. 23. Under section 274 the taxpayer must substantiate the amount of the deduction, time and place of the expenditure, business purpose, and business relationship to the taxpayer. Sec. 1.274-5(b), Income Tax Regs.↩